SCHOTT, Judge.
Defendant has appealed from the judgment awarding plaintiff Workmen’s Compensation benefits for total disability for a period of 21 weeks between January and June, 1975. The issue is whether or not plaintiff carried her burden of proof in the trial court.
Plaintiff, employed as a typist, slipped and fell in defendant’s office at the end of the day’s work on January 16,1975. On the following day she reported this accident to her supervisor and an appointment was made for her to see Dr. Williams, the company orthopedic physician. He examined her on that day and found slight tenderness in the lumbar muscles but no spasm and a superficial abrasion over the right knee. He was of the opinion that she had a mild lumbosacral strain with mild contusions and abrasions. However, he did not consider her disabled and referred her back to work. According to the supervisor, she returned to work on that day and performed her duties, although plaintiff testified she was then in pain.
On Monday, January 20, plaintiff called in to the supervisor stating she was still suffering with pain in her knees, legs and back, so that another appointment was made for her to see Dr. Williams. On that occasion he found tenderness in her low back and gave her an injection but was still of the opinion that she could return to work. She returned to work and sat at her desk a short while but stated she was not feeling well, whereupon she spent the remainder of the day in the sick room. On January 21 plaintiff again called in and stated she was suffering with pain. She declined to see Dr. Williams whose services she was again offered but stated that she would see her own physician, Dr. Pusateri, another orthopedic surgeon. She was told that she would not be paid for the time she was away from the job.
Plaintiff saw Dr. Pusateri for the first time on January 21. He testified that she had no spasm and a full range of motion of the lumbar spine. All tests were negative except one which indicated some pain on the left side of her sacroiliac joint and tenderness over the kneecap. He could not account for her complaints of severe pain on the basis of his tests but gave her the *632 benefit of the doubt placing her on pain medication and bed rest for one week. She returned to him a week later with the same complaints. He found nothing abnormal and advised her to see a general physician, thinking that she may have some kidney or other internal problem.
In the meantime on January 23 plaintiff called her supervisor saying that she was in great pain, so that the supervisor again made an appointment for her to see Dr. Williams. Once again his examination disclosed no spasm but only tenderness. He still thought she was able to work.
Plaintiff did not return to work except on one day in March, following a conversation with her supervisor in which she stated she was still suffering with pain but wanted to work anyway. According to the supervisor, when plaintiff was absent from her desk in the midafternoon for an unusually long time she went looking for plaintiff and found her in the ladies lounge crying. She told the supervisor she had pain in her back and was placed in the sick room where she remained for the rest of the day. On the following day plaintiff called the supervisor stating she had pain in her back with nausea and that she had contacted her family physician, Dr. DeMatteo. On March 16 plaintiff contacted the supervisor and asked to be allowed to work half days, but this request was refused. She was scheduled for a reevaluation by Dr. Williams for March 20.
In the meantime Dr. Williams had seen plaintiff on February 19 when he discovered a three-quarter inch mass just below her right knee joint. This he diagnosed as a thrombosis in a small vein or a tumor, and he recommended its removal, but he did not consider it disabling. Plaintiff’s visit to Dr. Williams on March 20 was her last to him. She again complained of back pain when sitting but again his examination revealed no muscle spasm but tenderness in her low back. He explained that while muscle spasm is an objective finding as is severe restriction of motion, tenderness “is in the gray zone” between subjective and objective. Following this final examination with Dr. Williams plaintiff contacted the supervisor on March 24 complaining of pain and requesting that she be permitted to take vacation, which was denied, and on March 27 she was informed that unless she reported for work on March 31 her employment would be terminated.
In the meantime on February 17 she returned to Dr. Pusateri and found that her back was normal despite her complaints of pain. He found the thrombosis vein in the right knee in connection with which he asked that she return the following week. Her final visit to Dr. Pusateri was on February 25 when the vein was smaller and he felt that no surgery was indicated.
After being terminated by the company plaintiff consulted her attorney who recommended her to Dr. Henry Braden, III, a general practitioner and surgeon, who saw her on April 10 and treated her until June when he discharged her. When Dr. Braden examined plaintiff he found muscle spasm in the lumbosacral region with limitation of motion, pain and tenderness. He also found the small mass behind the right knee. He diagnosed lumbosacral sprain and prescribed moist heat and exercise. Because she was one month pregnant at the time he did not prescribe muscle relaxants. He testified that during her treatment she was prevented from work which required bending, stooping and lifting, and consequently was disabled.
Defendant’s primary contention centers around the fact that Dr. Braden found muscle spasm on April 10 whereas no muscle spasm had been picked up by the previous physicians who examined plaintiff, and all of the doctors, including Dr. Braden, testified that if the spasm in April was caused by the January accident there would have been spasm during the intervening time.
The trial judge found and the testimony of Dr. Braden surely supports the finding that plaintiff was disabled from April 10 until he discharged her in June. Thus, the only explanation for her disability at that time, other than the accident of January, would be some intervening trauma to the *633 back. Plaintiff specifically testified that she had no other injury to the back after her accident of January. She also testified that her pain was continual from the time of the accident. It is essentially a question of credibility. The judgment of the trial court represents a credibility call in favor of plaintiff that she had no intervening trauma, and for us to hold that her disability between April and June was not caused by the accident would essentially constitute a substitution of our evaluation of plaintiff’s credibility for that of the trial judge.
The testimony of the physicians that spasm would have been present between the time of the accident and April 10 had the April 10 spasm been related to the accident must have been considered by the trial judge in the light of the fact that plaintiff repeatedly sought medical treatment, not only from her own physicians, but from Dr. Williams on several occasions. If she were a malingerer and were in no distress whatsoever it seems unusual that she spent so much time returning to the same physician who had previously told her that nothing was wrong with her, especially considering that he was the company physician. Perhaps the trial judge was impressed with the supervisor’s testimony that she found plaintiff crying in the ladies room on that day in March when she returned to work, or by the fact that plaintiff even offered to work half days while claiming she was in pain. Finally, he may have been impressed with the fact that this plaintiff had worked for defendant from 1972 until 1975 and had missed only four days work during that time. Whatever may be the explanation he believed her testimony to the effect that she was in continual pain to the extent that she could not work for that period, and there is sufficient, albeit weak, corroborating evidence to support his judgment.
Finally, defendant argues that plaintiff’s failure to produce Dr. DeMatteo creates a presumption that he would have testified adversely to her. While this creates another element of suspicion as to plaintiff’s case we cannot say that it compels the reversal of the judgment of the trial court in view of the fact that he could draw his own conclusions from that fact. He may have concluded that Dr. DeMatteo was not an orthopedic surgeon and consequently could shed no light on plaintiff’s back trouble or he may have concluded that Dr. DeMatteo, if called, would have simply testified that he found nothing wrong with plaintiff, as did Drs. Williams and Pusateri. Plaintiff’s failure to call Dr. DeMatteo more likely raises a presumption that Dr. DeMatteo would not have helped plaintiff’s case rather than a presumption that he would have actively or positively damaged her case. We cannot say that the weight of this presumption is such that it destroys plaintiff’s credibility as a matter of law.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.