391 So.2d 1282 (1980)
Vinell LANIEUX
v.
IBERVILLE SERVICES, INC., and United States Fidelity and Guaranty Company.
No. 13634.
Court of Appeal of Louisiana, First Circuit.
October 6, 1980.
Writ Refused December 5, 1980.
*1283 Aub A. Ward, Baton Rouge, for plaintiff-appellant Vinell Lanieux.
Ben Louis Day, Baton Rouge, for defendants-appellees Iberville Services, Inc. and United States Fidelity & Guaranty Co.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is a workmen's compensation case. The sole issue on appeal is whether the plaintiff proved that he is experiencing pain sufficient to render him totally and permanently disabled. In a thorough and well reasoned opinion, the learned trial judge found that the plaintiff failed in his burden of proving that he had substantial pain. We adopt the following reasons of the trial court as our own:
"Plaintiff, Vinell Lanieux, was employed by Iberville Services, Inc., as a welder. On April 4, 1978, while in the course and scope of his employment, Lanieux was struck in the back by a falling piece of angle iron. As a result of this injury he has asked for an award of full compensation benefits, contending that at the trial he was totally and permanently disabled within the meaning of the Workmen's Compensation Act. The defendant's workmen's compensation insurer, United States Fidelity & Guaranty Company, paid benefits to plaintiff through May 10, 1978, but thereafter discontinued payments. Plaintiff contends that the refusal to pay further compensation benefits was arbitrary, capricious and without probable cause. Plaintiff also seeks penalties and attorney's fees for the arbitrary refusal to continue compensation benefits.
"On April 5, 1978, Lanieux sought medical treatment from Dr. Richard M. Moon, general practitioner in Plaquemine, Louisiana, who gave Lanieux diathermy on four visits, April 5, 6, 7 & 10, 1978. Dr. Moon then referred Lanieux to Dr. Robert E. Hanchey, neurosurgeon, located in Baton Rouge, Louisiana. Simultaneously on April 11, 1978, Mr. Lanieux's attorney notified the employer of Lanieux's claim for workmen's compensation benefits (Exhibit D-2).
"Dr. Hanchey examined Lanieux on April 10, 1978, and found in the examination that Lanieux was suffering from a lumbar strain manifested by mild paralumbar muscle spasm. It was suggested that he seek bedrest, heat and analgesics and return in two weeks for re-evaluation.
"On April 19, 1978, Lanieux returned to Dr. Hanchey complaining of back and bilateral leg pain, particularly in the upper posterior thighs. His examination demonstrated a marked amount of voluntary guarding. The examination was negative and Lanieux was instructed to rest for approximately two weeks and return for re-evaluation. Tylenol # 4 was prescribed. Dr. Hanchey stated Lanieux never returned and that Lanieux should make a good recovery without other invasive diagnostic or surgical therapies. (Exhibit D-6).
*1284 "Mr. Lanieux then sought treatment from Dr. A. K. Fleet, general practitioner in Baton Rouge, who referred him to Dr. Stephen M. Wilson, orthopedic surgeon. Dr. Wilson examined Lanieux on May 10, 1978, and stated he could find no reasons he was having severe difficulties. Dr. Wilson stated the contusion to the lower back had sufficient time to heal and suggested he return to work. Lanieux returned to Dr. Wilson on May 17, 1978[;] however, Dr. Wilson reiterated his prior findings of May 10, 1978.
"Mr. Lanieux then sought chiropractic treatments from Dr. Cosimo Anthony Martello on June 12, 1978, who gave him approximately thirty-five treatments, from June 12, 1978, to October 19, 1978, which treatments consisted primarily of adjustments and therapy. The therapy consisted of traction and use of the hydroculator and G-5 vibrator. (Exhibit P-2). In the meantime, the employer and its insurer were notified that Joel B. Dickinson was now representing the claimant. (Exhibit D-10). The chiropractic report reflected the x-rays were negative but his diagnosis was that Lanieux had sustained a traumatic contusion of the first sacral roots, although no neurological defects were manifested. Lanieux testified he commenced seeing Dr. Martello after retaining Mr. Dickinson to represent him.
"After U.S.F. & G. terminated the weekly benefits effective May 10, 1978, Lanieux's attorney, Joel B. Dickinson, informed Mr. Roy Reine, claims adjuster for U.S.F. & G. [,] that Lanieux was still in pain and asked that he be re-examined by Dr. Stephen Wilson. Dr. Wilson re-examined Lanieux on August 11, 1978, and stated the examination was negative for any objective findings and suggested his returning to work. (Exhibit P-7).
"At the request of his present attorney, Lanieux was examined by Dr. Kenneth Vogel, neurologic surgeon, New Orleans, Louisiana. Dr. Vogel stated he examined Lanieux on January 4, 1979, and found mild right lumbar paraspinous muscle spasm. He suggested that Lanieux had a chronic lumbosacral strain with radicular findings suggestive but not diagnostic of a disc herniation. Dr. Vogel suggested conservative care plus intensive physiotherapy and to return in a month.
"On February 6, 1979, Lanieux returned to Dr. Vogel's office stating the therapy had temporarily relieved his condition but related low back and bilateral leg pain. Dr. Vogel stated the neurological examination was unchanged except for this time the bow string sign was positive. The bow string sign was explained as:
"A. `Bow string sign is really pressing on the nerveunder normal circumstances, if you press on the nerve, it might be mildly uncomfortable. If the nerve is in pain and the patient exhibits it as being painful, we call that sign a bow string sign.' (Exhibit P-5 page 10).
"At the February 6, 1979, examination Dr. Vogel suggested hospitalization of Lanieux for a complete re-evaluation plus a myelogram and lumbar discogram.
"Lanieux was admitted to the Mercy Hospital of New Orleans on March 11, 1979. A myelogram was performed March 12 and a discogram performed on March 14, 1979. Dr. Vogel stated these test[s] were negative and that Lanieux did not have a herniated lumbar disc. With these test[s] being negative Dr. Vogel suggested that Lanieux then might be experiencing symptoms secondary to lumbar myofascial pain syndrome. Dr. Vogel then performed a rhizotomy on March 16, 1979, while Lanieux was still confined in the hospital. Rhizotomy was defined as the cutting of the pain nerve with an electrode.
"Dr. Vogel stated that a person can normally commerce light type work three months after the rhizotomy[,] whereas heavy work is a bit longeranywhere from three months to a year. Dr. Vogel's records reflected seeing Lanieux on May 1, 1979, June 12, 1979, and August 16, 1979. At the last visit Dr. Vogel stated Lanieux was progressing satisfactorily and it was not felt he should return unless he needed to.
*1285 "Dr. Wilbert McClay, Jr., general practitioner of Plaquemine, Louisiana, since February 1978, testified he first saw Lanieux on August 10, 1979, at which time Lanieux was complaining of back and stomach pains. Dr. McClay hospitalized Lanieux in the Rhodes J. Spedal General Hospital from 8/20 to 8/31, 1979, during which confinement the treatment consisted primarily of target point injections. Dr. McClay described target point injections as injecting various pain drugs in the pain area. (See Exhibit P-6 for the various drugs used).
"Dr. McClay testified that after Lanieux's hospital welfare care expired, he gave office injections with the drugs left over from the hospital confinement.
"Both Dr. Vogel and McClay related that their treatment was attributed to the back injury of April 4, 1978. [These] opinions were based on the history obtained from the patient. Dr. McClay's prognosis of Lanieux was `undetermined.'
"Lanieux's explanation of using Drs. Martello, Vogel and McClay was that he was just trying to find someone to help him.
"This Court is aware that the purpose of the Workmen's Compensation Act is to protect workers from the hazards that accompany their job and that the Act is to be liberally construed to protect the employee from loss due to employment related to injury, and to place [on] the employer, who can more readily bear it, the risk of that loss. However, in claiming workmen's compensation benefits the party must establish his alleged disability by a preponderance of the evidence. Robertson v. Valhi, Inc., 345 So.2d 149 (La.App.1st Cir. 1977).
"An analysis of the medical evidence reveals that Drs. Hanchey and Wilson could find no reasons for Lanieux's complaints, whereas Dr. Martello in June 1978, was under the impression that Lanieux was suffering from traumatic contusion of the first sacral roots and treated him with adjustments and therapy for five months at a cost of $1,449.00. After a negative myelogram and discogram, Dr. Vogel was under the impression that a rhizotomy was necessary and performed such. His bill for services was $1,805.02 with a hospital charge of $2,962.14.
"After carefully considering the testimony of Lanieux and Dr. McClay, the report of Dr. Martello and the deposition of Dr. Vogel, this Court does not find this evidence persuasive and convincing.
"Insofar as the claim for medical expenses, only the bill of Baton Rouge Hospital, the bill of Dr. Martello, Dr. Vogel, Dr. McClay, Mercy Hospital of New Orleans and Rhodes J. Spedale Hospital remain unpaid. In finding the evidence from Drs. Martello, Vogel and McClay as not persuasive and convincing, this Court does not find these medical expenses necessary, [and] as such[,] not recoverable. The bill of the Baton Rouge General Hospital for x-rays on April 10, 1978, was not ever submitted to U.S.F. & G. for payment, even though connected with Dr. Hanchey's examination. This medical expense is to be paid by the employer and/or its insurer.
"Accordingly judgment is rendered herein in favor of Iberville Services, Inc., and United States Fidelity and Guaranty Company and against Vinell Lanieux denying his claim for compensation under the Louisiana Workmen's Compensation Act and denying all medical expenses, excepting the sum of $40.00 owing the Baton Rouge General Hospital for x-rays of April 10, 1978.
"The witness fee of Dr. McClay is fixed at $50.00. All costs[s] are to be paid by plaintiff."
Whether pain suffered by a workmen's compensation claimant is substantial enough to be disabling is a question of fact to be decided by the trial judge. The decision depends upon an evaluation of the plaintiff's credibility and upon the preponderance of the medical and lay testimony. Findings of the trial judge on factual issues in a workmen's compensation case are entitled to great weight and are not to be disturbed except on a showing of manifest error. Newell v. United States Fidelity and Guaranty Company, 368 So.2d 1158 (La. App.3rd Cir. 1979) and cases cited therein; Guidry v. Ford, Bacon & Davis Construction *1286 Corp., 376 So.2d 352 (La.App.3rd Cir. 1979); Farrar v. Guy Atkinson Company, 325 So.2d 893 (La.App.2nd Cir. 1976). The record in the case at bar clearly supports the trial judge's conclusion on this factual issue.
Plaintiff claims in the alternative on appeal that he should be allowed all of his medical expenses even if workmen's compensation benefits are disallowed. Under La.R.S. 23:1203, an employer must furnish all necessary medical, surgical and hospital services, and medicines, or any non-medical treatment recognized by the laws of this state as legal. We find that the only necessary medical expenses arising out of the accident suffered by the plaintiff were those expenses allowed by the trial court. We therefore affirm the trial court's judgment in this respect.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed at appellant's costs.
AFFIRMED.