420 So.2d 1209 (1982)
Russell COMEAUX, Plaintiff-Appellee,
v.
CAMERON OFFSHORE SERVICES, INC., Defendant-Appellant.
No. 82-173.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1982.
*1211 Simon, Peragine, Smith & Redfearn, Michael R. Daigle, New Orleans, for defendant-appellant.
McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET, and YELVERTON, JJ.
DOUCET, Judge.
This is a worker's compensation case wherein plaintiff, Russell Comeaux, was categorized as an "odd-lot" worker and was awarded benefits for permanent total disability. Defendant-appellant, Cameron Offshore Services, Inc., was further cast for statutory penalties and attorney's fees. Disputed on appeal is whether plaintiff sustained his burden of proving to a legal certainty and by a preponderance of evidence that he remains in substantial pain such as would preclude regular employment, and whether defendant's actions warranted imposition of penalties and attorney's fees.
On May 13, 1980, plaintiff sustained a straining-type injury to his back while collaring *1212 pipe in the normal course and scope of his employment with defendant, Cameron Offshore Services, Inc. He was examined at St. Patrick's Hospital, where he was told that he had a pulled muscle, given pain pills and discharged with instructions to consult another physician if the pain continued. The pain continued.
Two days subsequent to the injury plaintiff sought the services of a chiropractor who rendered treatment through May 26, 1980.
Approximately one month post-injury, on June 16, 1980, Comeaux was examined by Jerome W. Ambrister, an orthopedic surgeon. Dr. Ambrister diagnosed plaintiff's condition as lumbo-sacral strain, from which plaintiff was expected to recover in about six weeks. One month thereafter, July 25, 1980, Comeaux returned to Dr. Ambrister and was found "to have recovered from the lumbo-sacral strain, and has no resulting disability. He is thought to be physically able to return to his usual type of work."
On August 12, 1980, Comeaux underwent a neurological examination by Dr. William F. Foster, Jr. who diagnosed plaintiff's condition as "lumbo-sacral straining injury, resolved".
Plaintiff returned to Dr. Ambrister on August 19, 1980 and requested a written statement that he was able to return to work, which was granted. Benefits previously received were terminated August 20, 1980.
Upon returning to work at Cameron Offshore plaintiff experienced a resurgence in back pain and was subsequently discharged.
Following his discharge from Cameron Offshore, he obtained a job at The Woodshed, a local furniture refinishing shop, in September, 1980. For "almost a year" he sanded, stripped and sprayed wood furniture. Comeaux testified that he was terminated after he became "slowed down because his back gave out."
Following his discharge from The Woodshed, Comeaux occasionally painted commercial signs at home earning about $75.00 every two weeks. Even under such restricted working conditions plaintiff endures pain to the extent that he cannot sleep, according to the testimony of plaintiff and his wife. Nevertheless, Comeaux, along with his wife, partially rennovated a barn which they now use as living quarters. In this regard, Comeaux laid and tacked tar paper on the floor and helped carry a fifteen foot oval rug.
On July 10, 1981, plaintiff again sought medical treatment, consulting orthopedist Dr. R. Dale Bernauer. Dr. Bernauer's examination was essentially negative however, he noted a narrowed intervertebral disc interspace at the L5, S1 location. Dr. Bernauer felt that Comeaux would benefit from a myelogram so as to rule out any disc extention. Arrangements were made for this procedure, however the scheduled myelogram had to be cancelled due to defendant's refusal to pay the costs and the plaintiff's financial inability to pay the expense himself. Upon learning of Dr. Bernauer's recommendation, counsel for defendant arranged to have plaintiff re-examined by Dr. Ambrister. This examination was conducted on July 21, 1981, at which time Dr. Ambrister found no objective findings and rendered a negative report as to disability. Despite plaintiff's subjective complaints, Dr. Ambrister had no X-rays conducted, perhaps explaining the lack of objective data.
At the time of trial plaintiff remained under medication having received a prescription for pain killers from Dr. Bernauer a week prior thereto.
Testifying at trial were Dr. Bernauer, plaintiff and Patricia Comeaux, plaintiff's wife. The defense presented no witnesses. Following trial, judgment was rendered in favor of plaintiff and against defendant, the Court finding that Comeaux was totally and permanently disabled as a result of the May 13, 1980 injury and, further, that defendant was arbitrary and capricious in failing to pay compensation and medical expenses subsequent to August 20, 1980. Accordingly, defendant was assessed with statutory penalties on all unpaid benefits *1213 and attorney's fees in the amount of $2,000.00. From that judgment defendant has perfected this suspensive appeal.
Appellant assigns the following specification of errors:
1) The court erred in finding plaintiff totally and permanently disabled.
2) The court erred in finding defendant arbitrary and capricious in failing to pay compensation and medical expenses subsequent to August 20, 1980.
Appellant places emphasis upon the fact that Drs. Ambrister and Foster considered plaintiff to be without back problems, whereas only Dr. Bernauer found objective signs of disability. However, the number of witnesses is not a decisive factor as witnesses are weighed, not counted. Peyton v. Wade, 181 So.2d 878 (La.App. 4th Cir.1966). The fundamental function of the trier of facts is to determine the facts and this is not done by counting noses. U.S. Fidelity & Guaranty Co. v. Fiffie, 211 So.2d 690 (La.App. 4th Cir.1968). Furthermore, positive findings of medical experts are to be afforded greater weight than the negative findings as to the existence or not of a particular condition. Smith v. Highlands Ins. Co., 222 So.2d 540 (La.App. 4th Cir. 1969). The trial judge did not commit manifest error in assigning greater weight to the testimony of Dr. Bernauer.
Moreover, expert testimony is not controlling inasmuch as courts cannot abdicate their decision-making responsibilities in favor of the medical profession but must consider all factors present in a case. Broussard v. Broussard, 320 So.2d 236 (La. App. 3rd Cir.1975). The ultimate determination concerning disability is by the courts, not the medical profession. Guillory v. United States Fidelity and Guaranty Ins. Co., 420 So.2d 119, (La.1982). Hence the trial judge may accord greater weight to the testimony of a lay witness than that of expert witnesses. In this regard the trial judge specifically noted the veracity of plaintiff and his wife, and that plaintiff "demonstrated a sincere wish to be done with his back problems".
Similarly, the testimony of a physician who examines and treats an injured party is generally entitled to greater weight than that of a physician who examines the party at a later date. However, like all rules of law, the aforesaid rule is not inflexible, but subject to exception. All of the physicians involved acknowledged the existence of an injury; disagreement existed only as to its recovery or lack thereof. When one doctor deemed him recovered plaintiff proceeded to consult another physician. Dr. Bernauer exhibited concern for Comeaux's condition and sought objective data to aid in diagnoses. Under the circumstances we cannot conclude that the trial judge erred in assigning the weight given to the physician who had most recently examined plaintiff.
Next, appellant contends that plaintiff's failure to call as a witness the chiropractor consulted creates a presumption that his testimony would have been adverse. This presumption alone, where applicable, is not sufficient to outweigh or overcome the positive testimony of medical doctors who did testify inasmuch as a litigant is not required to produce all witnesses who might have some knowledge as to the matter in dispute. Boutte v. Mudd Seperators, Inc., 236 So.2d 906 (La.App. 3rd Cir. 1970), writ refused 256 La. 394, 240 So.2d 231 (1970); Motors Ins. Corp. v. Boling, 262 So.2d 156 (La.App. 3rd Cir.1972). This is particularly true where the witness is equally available to the defendant. Rushing v. Insurance Co. of North America, 391 So.2d 864 (La.App. 3rd Cir.1980); Crandall v. Scott, 350 So.2d 922 (La.App. 4th Cir. 1977). The trial judge may have concluded that, insofar as the chiropractor lacked the expertise of a medical physician, he could shed no additional light on plaintiff's condition. cf: Baham v. South Central Bell, 355 So.2d 630 (La.App. 4th Cir.1973).
We agree with the trial judge that plaintiff remains disabled, suffering substantial pain, as a result of the May 13, 1980 accident. Accordingly, we proceed to address the issue of whether claimant falls under *1214 the odd-lot doctrine such as would justify the award of total and permanent compensation.
The trial judge made the following observations with respect to plaintiff's condition:
"Plaintiff is not a highly educated person and is unskilled at any trade other than sign painting which he has followed from time to time. At the time of the accident he was working as a laborer with heavy pipe at defendant's shop. He returned to work and was discharged after about three days by his employer. He then worked as a helper in a furniture refinishing business and did well enough to be granted one raise in pay. He became `slowed down because his back gave out' and was terminated. Since then he has sought no employment but with the help of his wife he does some sign painting at home.
* * * * * *
Plaintiff testified he continued to have back pain during this entire period. He put a board under his mattress and his wife would massage his back at night to try to relieve the pain. This was corroborated by his wife, the only other lay witness."
We summarized the applicable law in Augustine v. Courtney Construction Co. Etc., 405 So.2d 579 (La.App. 3rd Cir.1981) as follows:
"A worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Lattin v. HICA Corporation, 395 So.2d 690 (La. 1981); Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980). However, substantial pain cases must also be analyzed within the framework of the Odd Lot Doctrine adopted by the Louisiana Supreme Court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). See Lattin v. HICA Corporation, supra; Wilson v. Ebasco Services, Inc., supra; Calogero v. City of New Orleans, 397 So.2d 1252 (La.1980); Dusang v. Henry C. Beck Builders, Inc., supra.
The Louisiana Supreme Court, in Lattin v. HICA Corporation, supra, stated that:
"Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot in the labor market, that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combine to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence."
"The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity to perform other jobs which are available, he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., supra." "
*1215 Applying the above law to the facts found by the trial judge, we find appellee presented a prima facie case for his inclusion in the "odd-lot" category, whereas defendant has failed to show there are jobs available to the injured worker. We cannot conclude that the trial judge was clearly wrong in finding that claimant's pain is substantial and appreciably limits the types of work available to him and diminishes his capacity to compete in the labor market. His good fortune in obtaining another job following his discharge from defendant's employ appears to have been a passing thing and he remains unable to hold employment. The record reflects that, at the time of trial, the only work available to plaintiff, sign painting, was on a part-time basis (generating $75.00 every two weeks), and required the assistance of his wife. An "odd-lot" claimant need not be absolutely helpless to qualify for total disability status. Busang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Oster v. Wetzel Printing Co., Inc., 390 So.2d 1318 (La.1980). It suffices that the injured plaintiff's physical condition, limited education and training, combine to place him at a substantial disadvantage in the competitive labor market.
Defendant's argument that plaintiff might later obtain gainful employment is entirely conjectural, particularly in light of present economic conditions. As noted by Professors Malone and Johnson in their Louisiana Civil Law Treatise, Worker's Compensation § 274 (2d ed. 1964) "... during a period of slack employment the one-armed worker or the employee who complains of a stiff back will probably be among the first to be laid off. Exposure to the uncertainties of the climate of the economy presents an even greater hazard where the injured employee has been obliged to change the nature of his work. By entering a strange field of endeavor he may be forced to compete under the additional handicap of inexperience." Should appellant's speculations about plaintiff's work prospects prove true, the judgment herein will, of course, be subject to modification upon a showing of change in the physical condition of the worker.
The trial judge assigned the following reasons for imposition of penalties and attorney's fees:
"The question of penalties and attorney's fees must be resolved by determining whether defendant did all it should before denying costs of the testing procedure. Admittedly, it did ask for another examination by Dr. Ambrister and chose to rely on his findings as opposed to those of Dr. Bernauer. The court was not made aware of any effort by defendant to ask Dr. Bernauer the basis of his findings and consequently was left unaware of the significance of Dr. Ambrister having taken no new X-rays or not having reviewed the new ones taken by Dr. Bernauer.
The plaintiff may not be penalized if defendant chooses to rely on one physician's negative opinion and ignores that of another which is to the contrary and which is supported by good reasons not explored." Accordingly, plaintiff was awarded penalties and attorney's fees pursuant to LSA-R.S. 23:1201-2.
It is the duty of the employer to provide medical services. LSA-R.S. 23:1203. It is the right of the injured employee, not the employer to select the physician for treatment of his disabling condition. Kinsey v. Traveler's Ins. Co., Inc., 402 So.2d 226 (La.App. 1st Cir.1981). This is so because the trust and confidence needed in a patient-doctor relationship is important to successful treatment. Malone and Johnson, supra, § 287, p. 672; Kinsey v. Travelers Inc. Co., Inc., supra. The penalty provisions of LSA-R.S. 23:1201-2 are applicable where an employer wrongly denies medical claims. Dupre v. Sterling Plate Glass & Paint Co., Inc., 344 So.2d 1060 (La.App. 1st Cir.1977); Scott v. Hartford Accident & Indemnity Co., 302 So.2d 641 (La.App. 3rd Cir.1974); Vining v. Phoenix of Hartford Ins. Co., 256 So.2d 698 (La.App. 1st Cir.1971).
Defendant was faced with conflicting medical reports, one from Dr. Ambrister, who was content with foregoing additional testing and disregarding plaintiff's *1216 complaints, another from Dr. Bernauer who was of the opinion a myelogram would aid in plaintiff's diagnoses. Without further investigation defendant chose to rely on the report most favorable to itself thereby depriving plaintiff of additional medical attention. In selecting such a course of action we believe Cameron Offshore proceeded at its own peril. Had Dr. Bernauer been questioned by defendant as to the reasons for recommending a myelogram, it would have been learned that his recommendation was based upon X-ray findings not available to other doctors. On the other hand, Dr. Ambrister, in his report to defense counsel dated July 21, 1981, admitted that no further testing had been conducted, and Dr. Foster stated simply that "I don't have anything to offer this gentleman from a neurological standpoint." (P-8, Medical Report, 12/11/80). We find, as did the trial judge, that the law requires an employer to look further into the merit of the worker's claim before refusing to pay for medical treatment. In this regard, this court heretofore has observed that "Perhaps, upon the employer's default in providing medical services needed, the injured workingman may possibly have been able to secure the needed medical treatment by charity or other means (and we doubt this under the present facts); nevertheless, the basic cause of the failure to receive adequate medical care is the employer's failure to comply with its mandatory statutory duty to furnish reasonable medical treatment needed by the injured claimant." Andrus v. Great American Ins. Co., 161 So.2d 109, at 111 (La.App. 3rd Cir.1964), writ denied 246 La. 86, 163 So.2d 360 (1964).
Although we find defendant's refusal to provide medical expenses to be without just cause, the same cannot be said of appellant's withholding of compensation payments. In the latter instance, defendant possessed not only conflicting medical reports but also evidence of plaintiff's employment and mobility at home. Accordingly, we find that penalties and attorney's fees should be computed on the basis of medical expenses only, cf: Vining v. Phoenix of Hartford Ins. Co., supra. Inasmuch as the record before us does not reveal said sum, the case is remanded for consideration of this matter.
For the reasons set forth hereinabove, the award of penalties and attorney's fees is reversed and the case remanded for consideration consistent with this opinion. In all other respects the judgment appealed is affirmed at appellant's cost.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
DOMENGEAUX, J., concurs in part and dissents in part and assigns reasons.
DOMENGEAUX, Judge, concurring in part and dissenting in part.
I do not find the odd lot doctrine applicable to this case. I conclude that plaintiff's disability should be governed under the substantial pain theory, without further categorizing it under odd lot.
I disagree with the imposition of penalties and attorney's fees.
In July of 1980, Doctor Ambrister, an orthopedic surgeon, found that plaintiff had recovered from the lumbo-sacral strain and had no resulting disability. Doctor Ambrister pronounced him physically able to return to his usual type of work. In August of 1980 the insurer also had a report from Doctor Foster, a neurological expert who stated that plaintiff's lumbo-sacral straining injury was resolved. Plaintiff asked to go back to work and his request was granted. Consequently, his benefits were discontinued in August of 1980. He was later discharged from his job and for about a year he engaged in various and sundry occupations, including sign painting.
In July of 1981 he was examined by Doctor Bernauer who suggested that a myelogram might be in order so as to rule out any disc extension. From learning of Doctor Bernauer's recommendation, defendant arranged to have plaintiff re-examined by Doctor Ambrister. This was done on July 21, 1981, and Doctor Ambrister found no objective findings and released another negative report as to disability.
*1217 The general rule on the subject of subsequent positive medical reports is set out by the Supreme Court in Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976). In Walker the Supreme Court stated:
"`[I]f subsequent to an initial optimistic report, an insurer receives medical information indisputably showing disability at a subsequent date, the insurer may not blindly rely upon the early report and solely on its basis avoid penalties for arbitrary non-payment of compensation benefits indisputably due a disabled workmen.' [Citations omitted]"
See also Hebert v. Loffland Brothers, 363 So.2d 969 (La.App. 3rd Cir.1978); Carter v. American Mutual Liability Insurance Co., 386 So.2d 1072 (La.App. 3rd Cir.1980); West v. Belden Corporation, 396 So.2d 1004 (La. App. 3rd Cir.1981); and Montgomery v. Commercial Union Assurance Co., 413 So.2d 969 (La.App. 3rd Cir.1982).
I feel that the majority opinion is extending the doctrine of the Walker case. Here, as soon as the insurer had the report from Doctor Bernauer suggesting a myelogram, the insurer sent the claimant back to Doctor Ambrister. The fact that Doctor Ambrister did not order an x-ray is of no consequence. Doctor Ambrister was still of the opinion after his examination that plaintiff was okay.
I feel, therefore that the insurer in this case did not idly sit back on its original negative reports. It immediately caused a re-examination of the plaintiff after it received the Bernauer report.