ARMSTRONG, Judge.
Plaintiff, Robert Francis, appeals from the dismissal of his suit for workers’ compensation. That suit was filed following an accident during the normal course and scope of his employment by the defendant, Gervais F. Favrot Co., Inc. We affirm.
On November 18, 1982 while working as a carpenter for the defendant, Mr. Francis hit himself on the right wrist area with a mallet (“the accident”). He immediately experienced severe pain in his right wrist. Mr. Francis reported the injury to his foreman who referred him to Dr. Richard Faust for treatment. On examination Dr. Faust observed a small superficial abrasion one inch above the snuffbox of the wrist. Mr. Francis complained of pain in the area of the abrasion and Dr. Faust noted that there was tenderness in the area of the snuffbox. Dr. Faust took x-rays of Mr. Francis’ injury. Those x-rays revealed a closed fracture of the waist of the scaphoid *1273 (navicular) bone of the right wrist with a hiatus of two millimeters. After viewing those x-rays, Dr. Faust formed the opinion that Mr. Francis’ fracture was not fresh, but was between one and six months old. Dr. Faust placed Mr. Francis’ right wrist arm in a short cast with a thumb gauntlet.
Subsequently Dr. Faust referred Mr. Francis to Dr. George Cary, an expert in orthopaedic surgery, who, without removing Mr. Francis’ cast, examined him on November 20, 1982. After reviewing the x-rays and history provided by Dr. Faust, Dr. Cary determined that the fracture was over five to six months old.
On December 12, 1982 Mr. Francis was examined by Dr. Kenneth Adatto, also an expert in orthopedic surgery, who had previously treated Mr. Francis for complications resulting from a stingray bite. After reviewing the x-rays taken by Dr. Faust, Dr. Adatto also reached the conclusion that Mr. Francis had sustained the fracture pri- or to the accident. Dr. Adatto continued to treat Mr. Francis, and removed his cast on December 27, 1982. When Mr. Francis failed to respond to conservative treatment, Dr. Adatto recommended bone graft surgery which was performed in March of 1983.
In addition, on March 9,1983 Mr. Francis was examined by Dr. Kenneth Saer. After reviewing the x-ray and history taken by Dr. Faust, Dr. Saer reached the conclusion that Mr. Francis’ fracture was approximately six months old at the time of the accident.
On January 4, 1983, Mr. Francis filed a petition for workers’ compensation, and on September 9, 1983 a trial was held on that matter. At trial Mr. Francis testified that he continued to experience pain in his right wrist and consequently was unable to work as a carpenter and had not been employed in any capacity since the accident. Mr. Francis’ wife, Janice Francis, also testified that her husband had not experienced any pain in his right wrist before the accident. In addition, Mr. Francis’ co-worker, Robert Brown, Jr., testified that up to approximately six weeks prior to the accident (when Mr. Brown terminated his employment with the defendant) Mr. Francis never complained of pain in his right wrist.
Dr. Adatto also testified on behalf of Mr. Francis. In Dr. Adatto’s opinion Mr. Francis’ fracture was asymptomatic prior to the accident, and the blow to his wrist caused it to become symptomatic. In addition, Dr. Adatto testified that Mr. Francis was responding to treatment, although the fracture had not healed as of the date of trial. Dr. Adatto also testified that under any circumstances Mr. Francis would continue to have problems with his wrist and would have limited motion of the wrist.
In contrast, Dr. Faust testified that, in his opinion, the accident was not the cause of Mr. Francis disability. Dr. Faust’s opinion was based on the following facts: that Mr. Francis did not hit himself directly over the snuffbox of the wrist; and that Mr. Francis, in his history, indicated that he had fallen on his hand the previous month while hunting, and, the previous week, in an elevator at work. However, Mr. Francis denied telling Dr. Faust that he had fallen on his hand while hunting and did not recall having done so. He did, however, recall falling in the elevator at work, but had not reported that incident because he had experienced no pain or discomfort.
Dr. George Cary testified that he had examined Mr. Francis’ wrist while it was enclosed in a cast and that in his opinion, based on the x-ray and history obtained from Dr. Faust, Mr. Francis’ injury had not been aggravated by the November 18, 1982 accident. . Dr. Cary also stated that it is possible that a navicular fracture would not have given Mr. Francis any trouble whatsoever prior to the accident.
Dr. Kenneth Saer testified that, in his opinion, it is unlikely that the accident would have caused any permanent aggravation of Mr. Francis’ fracture. Dr. Saer did believe, however, that “a direct blow to the area of a fracture or to a joint, it may make that joint painful for a time.” He also stated that a fracture of the navicular would have permanently disabled Mr. Francis to some extent.
*1274 In its reasons for judgment, the trial court stated that “the Court is of the opinion that the plaintiff has not proved his Workmens Compensation case by a preponderance of the evidence. The weight of the medical testimony and the evidence is in favor of the defendant’s doctor diagnosis and version of the claimant’s injury of November 18, 1982. The plaintiff has failed to prove an aggravation of a pre-existing injury and is not entitled to recover ... The employer relied on medical reports, and, as such, the employer cannot be considered arbitrary and capricious, rendering it liable for attorney fees and penalties for the non-payment of Workmens Compensation.”
On appeal, Mr. Francis claims that the trial court erred in finding that he failed to prove his case by a preponderance of the evidence and in not awarding him penalties and attorney's fees.
The primary issue for our consideration is whether the plaintiff proved that he was indeed entitled to workers’ compensation. The requirements for a successful claim under the workers’ compensation law are, “personal injury which is the result of an accident, which accident in turn arises out of and in the course of employment. The Louisiana compensation act does not require that the employment cause the disability. The chain of causation required by the statutory scheme as adopted by the Legislature in R.S. 23:1031 is that the employment causes the accident, the accident causes injury, and the injury causes disability.” Guillory v. United States Fidelity & Guaranty Insurance Company, 420 So.2d 119 at 122 (La.1982).
There is no dispute in the case at bar that the accident did occur and that it arose in the course and scope of Mr. Francis’ employment nor do the defendants refute Mr. Francis’ claim that subsequent to the accident he experienced pain. The defendants do dispute whether the accident actually caused Mr. Francis’ preexisting asymptomatic fracture to become symptomatic.
It is well established that “[wjhere there is proof of an accident and of the following disability without any intervening cause it is presumed that the accident caused the disability. It is not necessary to determine the exact cause of the disability.” Guillory v. United States Fidelity and Guaranty Insurance Company, supra at 123. Since Mr. Francis proved that there was an accident and a following disability without an intervening cause, we have reached the conclusion that Mr. Francis is entitled to the presumption that the accident caused the disability. That presumption shifts the burden to the defendant to produce evidence sufficient to rebut it. Martin v. Rollins Services, Inc., 424 So.2d 429 (La.App. 4th Cir.1982).
The defendant contends that it rebutted the presumption through the testimony of Drs. Faust, Saer and Cary. We agree. Both Drs. Saer and Cary concurred with Dr. Faust’s opinion that Mr. Francis’ disability was not caused by the accident. Those doctors thought that because the blow was one inch above the location of the fracture it was unlikely that it could have caused Mr. Francis’ disability. That testimony was sufficient to rebut the presumption that the accident caused the disability.
Once the defendants rebutted that presumption, the trial court was entitled to weigh the evidence as though no presumption existed. McCormick, Law of Evidence, § 345 (2d ed. 1972). After weighing the evidence and evaluating the credibility of the witnesses the trial court determined that the evidence and testimony presented by the defendants was more convincing, and concluded that the plaintiff’s disability was not caused by the accident. It is well settled that “reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.” Canter v. Koehring Company, 283 So.2d 716 at 724 (La.1973).
However, Mr. Francis maintains that the trial court erred in according greater weight to the opinions of Drs. *1275 Faust, Saer and Cary then it did to that of his treating physician, Dr. Adatto. It is true that, “[w]hen the opinion of medical experts differ, great weight is usually given to the opinion of the treating physician.” Martin v. Rollins Services, Inc., 424 So.2d 429 at 432 (La.App. 4th Cir.1982). “However, like all rules of law, the aforesaid rule is not inflexible but subject to exception.” Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 at 1213 (La.App. 3rd Cir.1982). Although Dr. Adatto was the treating physician, Dr. Faust saw Mr. Francis immediately after the accident and before the cast was placed on his arm. Under these circumstances we do not think that the trial court erred in giving more weight to the opinions of Drs. Faust, Saer and Cary.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.