515 So.2d 525 (1987)
Mary MENENDEZ
v.
CONTINENTAL INSURANCE COMPANY.
No. CA 86 0978.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Rehearing Denied December 11, 1987.
Stay Order Denied; Writ Denied January 15, 1988.
*526 C. John Caskey, Baton Rouge, for plaintiff-appellant Mary Menendez.
Arthur Cobb, Baton Rouge, in pro. per.
Mary H. Thompson, Baton Rouge, for defendant-appellee Continental Ins. Co.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
In this worker's compensation proceeding, plaintiff, Dr. Mary Menendez, appeals a finding by the trial court that her present allergic condition to things in the environment was not triggered by a medication prescribed to her following her accident at work. The trial court found in favor of the defendant Continental Insurance Company and intervenor Arthur Cobb.

FACTS
Plaintiff sustained a work-related injury April 21, 1981, when she fell down the steps during the course and scope of her employment on the Baton Rouge campus of Louisiana State University. Plaintiff has been unable to work since that time and had back surgery by Dr. Ralph Rashbaum September 12, 1983. On October 5, 1983, Dr. Rashbaum prescribed Tylenol III and Motrin. Upon realizing the prescription was for Motrin, she attempted to have Dr. Rashbaum change it because Motrin upsets her gastrointestinal tract. His assistant, Jim McKenney, substituted the Motrin prescription with two to four sample bottles of Feldene. The label on the sample bottle of Feldene introduced into evidence read, "One Week's Supply, 7 Capsules," and "Usual Dosage: One Capsule per Day." The plaintiff testified she thought she had taken the Feldene four times a day. Within two and one-half weeks, she experienced numbness and tingling in her face and hands, nausea, dizziness, burning in the lower back, legs and underarms, and spontaneous bruising the size of lemons. On or about October 26, 1983, she called Dr. Rashbaum, who was unavailable, to report the adverse reaction. His assistant called back and explained Dr. Rashbaum wanted *527 her to continue taking the Feldene. She followed the advice, but her condition worsened. On or about November 6, she stopped taking the Feldene on her own. When her symptoms showed no improvement and she additionally began to experience "racing" sensations, she sought help from Dr. Alfred Johnson, who admitted her November 18 to the environmental isolation unit at the Northeast Community Hospital in Dallas, Texas.
Dr. Johnson testified he believed the Feldene was a "triggering" agent that "sensitized" plaintiff to many things in her environment, including formaldehyde found in carpet, cigarette smoke, and such foods as carrots, sweet potatoes, chicken, walnuts, rice, beef, eggs, certain fruits, kidney beans, soy, red snapper, salmon, shrimp and flounder. Dr. Johnson was accepted as an expert in the field of osteopathic medicine, internal medicine, allergy, ecology, and environmental medicine.
Testimony also revealed plaintiff had not had such sensitivities before taking the Feldene. However, in 1978, or 1979, she had experienced a reaction similar to the one she had with Feldene when she was given a drug following surgery. She could not recall the name of the drug, but like Feldene, she said it too was an anti-inflammatory. The symptoms stopped within a few days after she stopped taking the drug. While the "acute" reaction to the Feldene ended during her three-week hospital stay, she testified she is now "hypersensitive" and cannot get too near such things as detergents in supermarkets without fainting.
Dr. Johnson testified plaintiff's treatment consists of avoiding those things to which she tested positive. He also prescribed vitamins and minerals, and antigen injections to strengthen her immune system. Tests showed plaintiff had a low IGA (immune globulin A deficiency). Plaintiff discontinued the injections due to their cost.
Defendant paid for the three-week hospital stay and Dr. Johnson's initial evaluation, but refused to pay any further bills related to plaintiff's allergic condition.
Dr. Johnson testified plaintiff still suffers from her back pain, and her allergic condition confines her to her home. He stated her prognosis for a full orthopedic recovery would be enhanced if she could follow the prescribed immunotherapy.
Defendant offered the testimony of Dr. Ronald E. Gots, an M.D. and a Ph.D. in pharmacology with an emphasis in both pharmacology and toxicology. Dr. Gots was accepted as an expert in the field of pharmacology and toxicology. Dr. Gots was critical of Dr. Johnson and his treatments because he did not think clinical ecology was a scientific practice. Although Dr. Gots thought plaintiff probably suffered an adverse reaction to the Feldene initially, he doubted she had the hypersensitive condition described by Dr. Johnson. He opined, "Feldene could not have caused [a hypersensitive condition] because it doesn't exist. But, besides that, even if there were such a thing as a panallergic phenomena of some sort, there is no indication anywhere in the literature of the world that Feldene is an incitor of such a disorder." Dr. Gots conceded he never saw nor examined plaintiff.

TRIAL COURT
The trial court denied recovery, concluding that plaintiff's allergic reaction was "not in the nature of natural, foreseeable and expected consequences of the plaintiff's work-related injury." The trial court was particularly persuaded by Dr. Gots that "there is no precedent or scientific basis for the allegation that the anti-inflammatory medication taken by the plaintiff could in any way produce the allergic reaction or sensitivities to environmental factors as alleged."

ASSIGNMENTS OF ERROR
In appealing, plaintiff-appellant contends the trial court erred (1) in holding the drug reaction must be a foreseeable and expected consequence of plaintiff's work-related injury, and (2) in failing to accord deferential weight to the testimony of plaintiff's treating physician as opposed to the testimony of defendant's expert.

*528 ASSIGNMENT OF ERROR NO. 1
It is well settled a worker's compensation claimant's disability is presumed to result from an accident, if before the accident claimant was in good health and commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided the medical evidence shows a reasonable possibility of causal connection between the accident and the disabling condition. Hammond v. Fidelity & Casualty Co. of New York, 419 So.2d 829 (La.1982).
Defendant argues if there is an intervening cause, there is no liability for compensation beyond the disability produced by the job-connected accident. But when there is no intervening cause, it is presumed the accident caused the disability. Haughton v. Fireman's Fund American Ins. Companies, 355 So.2d 927 (La.1978). Here, there is no evidence of an intervening cause. Thus, the presumption applies and the burden shifted to the defendant, who failed to prove the accident did not cause the disability.
Thus, assuming arguendo, the dosage of Feldene taken by plaintiff caused an adverse reaction, and this adverse reaction so "sensitized" plaintiff as to cause her to have allergic reactions to things in her environment, the question then becomes whether the trial court was correct in requiring such a condition be in the nature of natural, foreseeable, and expected consequences of plaintiff's work-related injury.
This court, in Stevenson v. Bolton Company, Inc., 484 So.2d 678 (La.App. 1st Cir. 1985), writ denied, 489 So.2d 247 (La.1986), held the employer liable for subsequent medical malpractice or excessive medical treatment. The court opined:
Louisiana jurisprudence recognizes that if subsequent medical malpractice or excessive medical treatment occurs, the plaintiff is entitled to recover either in a tort case against the tortfeasor, or in a worker's compensation case against the employer and insurer. In both situations the tortfeasor and the employer and insurer have at their disposal the right to then sue the doctor either for recovery based on the extent to which the compensation responsibility or tort damages have been augmented owing to such malpractice or for reimbursement of the excessive cost for treatment. Stevenson, 484 So.2d at 684.
More specifically, in Ryan v. Aetna Casualty & Surety Co., 161 So.2d 286, 289 (La.App. 2nd Cir.1964), the court held that "[u]navoidable complications arising from medical treatment are compensable. LSA-R.S. 23:1021(1)." See also, Fields v. Sperry Rand Corporation, 343 So.2d 339 (La. App. 2nd Cir.1977), writ denied, 345 So.2d 902 (La.1977); Deville v. Townsend Bros. Construction Company, 284 So.2d 110 (La.App. 3rd Cir.1973), writ denied, 286 So. 2d 367 (La.1973).
Conversely, defendant argues the Worker's Compensation Act at La.R.S. 23:1203 does not contemplate such a reaction as plaintiff had. The act mandates the employer pay for "all necessary medical, surgical, and hospital services, and medicines...." Defendant argues the act encompasses treatment for only those reactions that are the foreseeable or expected consequences of treatment for the work-related injury. Defendant cites 1 W. Malone & A. Johnson, Workers' Compensation Law and Practice § 236, in 13 Louisiana Civil Law Treatise (2d ed. 1980), as authority for the premise that the employer should not be liable for an independent harm which the employee sustains if the medical testimony is that the harm had nothing to do with the work-related accident. However, the treatise also distinguishes independent harms, such as an accident enroute to the doctor's office, from "unavoidable consequences" arising from medical treatment. The treatise notes the jurisprudence has uniformly decided the latter are covered by the act, and cites Ryan, supra, as one such case granting recovery.
Assuming the Feldene caused the hypersensitivity, we conclude the trial court was in error in determining the hypersensitivity had to be a foreseeable and expected consequence of plaintiff's work-related injury to be covered by the act. Foreseeability is not the determining *529 factor. Moreover, this court notes the "liberal purpose and intent of coverage of worker's compensation to the benefit of the employee." Stevenson, supra, p. 684.
Defendant argues that findings of the trial court are entitled to great weight and are not to be disturbed except on a showing of manifest error. Lanieux v. Iberville Services, Inc., 391 So.2d 1282 (La.App. 1st Cir.1980), writ denied, 394 So.2d 1243 (La. 1980). That case dealt with questions of fact; the case sub judice pertains to questions of law.

ASSIGNMENT OF ERROR NO. 2
More significant than whether the hypersensitivity was a result of the accident is whether the Feldene caused the hypersensitivity.
In denying recovery, the trial court stated:
[T]here is no scientifically demonstrable evidence that the plaintiff's allergic condition developed or could have developed as a result of the treatment she received for her back condition.
The Court is particularly persuaded by defendant's expert who says that in the scientific body of knowledge known as pharmacology, there is no precedent or scientific basis for the allegation that the anti-inflammatory medication provided to plaintiff could in any way produce the allergic reaction or sensitivities to environmental factors as alleged.
On the other hand, plaintiff's expert, accepted as such in the field of allergy, ecology, and environmental medicine, was of the opinion that plaintiff's hypersensitivity was caused by the Feldene. Dr. Johnson based his opinion on the medical history of plaintiff, as well as his observation and treatment of plaintiff. Of the two medicines being taken by plaintiff at the time of the reaction, Tylenol III and Feldene, Dr. Johnson concluded Feldene caused plaintiff's problems because of an earlier reaction to similar medication.
Plaintiff argues the trial court erred as a matter of law in not according deferential weight to the testimony of the treating physician, as opposed to defendant's expert who had never examined plaintiff and professed no knowledge of the sub-specialty of the treating physician.
Defendant concedes the general rule is the court should place greater weight and probative value on the testimony of the treating physician than that of the physician who examines the plaintiff merely for evaluation purposes. But the defendant argues that rule applies only if the testimony of the former is credible and of such a nature as to carry greater weight, is more convincing, or is the more probable. Defendant cites Jaeckle v. Dresser Industries, Inc., 447 So.2d 15 (La.App. 1st Cir. 1984), writ granted, 450 So.2d 356 (La.1984) as authority for such proposition. However, the Supreme Court reversed that decision in Jaeckle v. Dresser Industries, Inc., 457 So.2d 646 (La.1984) and restated the general rule without qualifying it. In the appellate court opinion, the credibility reference was directed at plaintiff's own credibility because of the discrepancies between plaintiff's testimony and the medical records. In the instant case, plaintiff's credibility is not at issue, nor is there any discrepancy between plaintiff's testimony and her medical records. Of particular importance is the absence of any examination of plaintiff by defendant's expert. In a similar case, this court affirmed a decision by the trial court which accorded more deference to the treating physician than the expert who had examined the plaintiff for only 13 minutes. Burton v. Foret, 484 So.2d 753 (La.App. 1st Cir.1986), affirmed, 498 So.2d 706 (La.1986).
Defendant also cites Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3rd Cir.1982) as stating the "deference" rule is not inflexible and is subject to exception. The "deference" rule cited by the court did not involve testimony of a non-treating physician and that of a treating physician, but rather involved testimony of two physicians who had examined and treated the plaintiff at different times. The court in that case found it necessary to apply the exception and accord the testimony of the later-treating physician.
*530 In the case at bar, this court follows the general rule and finds, as a matter of law, the trial court erred in not according greater weight to the testimony of the treating physician.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed, and there is now judgment in favor of plaintiff, Mary Menendez, and against defendant, Continental Insurance Company, for the full sum of TWENTY TWO THOUSAND TWO HUNDRED EIGHTY NINE AND 82/100 ($22,289.82) DOLLARS. This matter is remanded for the purposes of the trial court issuing an appropriate order directing the medical payments continue through the course of plaintiff's disability and determining reasonable statutory attorney fees. All costs in the trial court and in this court are assessed against Continental Insurance Company.
REVERSED, RENDERED and REMANDED.