516 So.2d 440 (1987)
Bernell L. KEITH,
v.
LOUISIANA STATE OFFICE OF RISK MANAGEMENT.
No. CA861244.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
Rehearing Denied January 5, 1988.
*441 Joseph H. Simpson, Amite, for plaintiff-appellee.
Tom H. Matheny, Hammond, Stephen W. Cavanaugh, Baton Rouge, for defendant-appellant Louisiana State Office of Risk Management.
Before LANIER, CRAIN and LeBLANC, JJ.
LANIER, Judge.
This is a suit for worker's compensation benefits, medical expenses and statutory penalties. The employer denied liability, asserting the employee did not suffer a work-related accident. The trial court found as fact that the employee was injured by an accident which occurred during the course and scope of his employment but that the employer was not arbitrary and capricious in refusing to pay worker's compensation benefits. The trial court found the employee totally disabled and awarded him weekly benefit payments of $138.39 and medical expenses of $10,115.90. This suspensive appeal followed.

FACTS
Bernell Keith was an employee of Lallie Kemp Charity Hospital (Hospital) in Independence, Tangipahoa Parish, Louisiana. Keith's job title was Operator Engineer II. His responsibilities consisted of checking the Hospital's equipment to see if it was operating properly, installing air-conditioners, performing plumbing work and doing general maintenance.
In September of 1984, while helping the housekeeping supervisor, Deloris McLain, move a fifty-five gallon drum of wax, Keith slipped and fell on his buttocks. Plaintiff testified he felt pain when he fell, and, a few weeks after he fell, he started having pain in his leg. At the time of the accident, Keith did not report the incident to his employer. He continued to work following the accident until March 18, 1985, when he consulted Dr. Larry Ferachi because of increasing pain in his leg.
After examining the plaintiff, Dr. Ferachi's clinical impression was that Keith suffered from a herniated nucleus pulposis L5-S1 level on the right. Because of this finding, Keith was hospitalized on March 19, 1985. He underwent diagnostic testing and subsequent back surgery. The surgery was performed by Dr. J. Larry Fambrough. The surgery revealed that Keith had a ruptured disc at the L5-S1 level which impinged upon the dura. A disc fragment was removed, and Keith was discharged from the hospital on April 1, 1985.

SUFFICIENCY OF EVIDENCE OF LIABILITY

(Assignments of Error Numbers 1 and 3)
Defendant argues that the court erred in finding plaintiff's injury was work related. Defendant contends the evidence does not support the conclusion that the accident occurred within the course and scope of plaintiff's employment. Defendant further argues that the court erred in finding that Keith's injury was caused by the incident alleged. Defendant maintains that plaintiff did not prove by a preponderance of the evidence that the injury sustained was caused by the accident.
A worker's compensation claimant must establish the occurrence of a work-related accident by a preponderance of the evidence. Neldare v. Board of Supervisors of Southern University, 460 So.2d 26 (La.App. 1st Cir.1984); Johnson v. Louisiana State University, 417 So.2d 467 (La. App. 1st Cir.1982). A plaintiff in a worker's compensation suit has the burden of establishing by a preponderance of the evidence the causal connection between his disability and the accident. Robertson v. Scanio Produce & Institutional Foods, Inc., 449 So.2d 459 (La.1984); Bridgewater v. Crown Zellerbach, 449 So.2d 515 (La. App. 1st Cir.1984).
The trial court found that plaintiff "has established by a preponderance of the *442 evidence that he was actually injured in an accident while employed at Lallie Kemp Hospital; that the said accident occurred during the course and scope of his employment."
The factual findings of the district court as to work-related disability are entitled to great weight on appellate review and are not to be disturbed absent manifest error. Donald v. Big Three Industries, Inc., 426 So.2d 257 (La.App. 1st Cir.), writ denied, 429 So.2d 157 (La.1983); Lanieux v. Iberville Services, Inc., 391 So.2d 1282 (La. App. 1st Cir.), writ denied, 394 So.2d 1243 (La.1980).
After reviewing the record, we find no manifest error in the trial court's factual findings. The evidence amply supports the findings.
Keith testified that while at work, sometime during the month of September 1984, he was asked by the housekeeping supervisor to remove a drum of wax from the loading docks to a housekeeping storeroom. In the process of moving the drum, he slipped and fell on his buttocks. He felt pain when he fell, and he stayed sitting for a few minutes. A few weeks after the accident, he started having pain in his leg. The pain continued to worsen; therefore, on March 18, 1985, he sought Dr. Ferachi's help.
An eyewitness to the accident, Deloris McLain, testified that she did in fact witness the accident. She stated that plaintiff slipped when helping her move a fifty-five gallon drum of wax.
Keith's version of the accident was corroborated by the testimony of his wife. She stated that, on the evening of the accident, Keith told her of the accident. She also stated that, about two weeks after the accident, Keith started having pain in his leg. She further stated that she knew of no incident that happened between September of 1984 and March of 1985 that might have injured Keith's back other than the fall at the hospital.
Michael Wartberg and James Taylor, co-employees of Keith, testified that Keith told them of the accident. Wartberg testified that, when he relieved Keith on the evening of the accident, Keith told him about the accident. Keith told Wartberg that his back hurt when he fell. Wartberg further testified that when he next saw Keith, two weeks to a month after the accident, Keith looked like he was having trouble getting out of a chair.
Taylor testified that Keith told him of the accident when he relieved Keith, three days after the accident. He stated that Keith was complaining of back pain at that time.
Joseph Drago, an employee of the Hospital at the time of the accident and plaintiff's supervisor, testified that plaintiff did not report the accident to him, but he heard about it.
Dr. Fambrough, when questioned about the causal nexus between the accident and Keith's back operation and disability, responded as follows:
Three out of four discs are not precipitated by one traumatic episode. As a general rule the disc is worn out by the physiologic wear and tear of a long period of time, over a long period of time. He did give a history of having a couple of years history of lower back discomfort. Assuming he had the injury in September and acute exacerbation of discomfort, which persisted up until March then I think that you would assume that these were related.
The trial court's factual findings about the work-related injury and the causal nexus between the work-related injury and the disability are not manifestly erroneous.
These assignments of error are without merit.

EXTENT OF DISABILITY

(Assignment of Error Number 2)
Defendant asserts that the court erred in finding plaintiff to be totally disabled. The trial court found that plaintiff was totally disabled after March 18, 1985, but did not give reasons for this holding or quantify the disability as permanent or temporary.
*443 The only medical testimony of record concerning Keith's disability is that of Dr. Fambrough. Dr. Fambrough testified Keith was admitted to the hospital for testing and surgery on March 19, 1985, and released from the hospital on April 1, 1985. By July 9, 1985, Keith's back condition had "stabilized", and Dr. Fambrough made the following disability finding:
And I recommended that..... he return to his former....that he would not be able to return to the former employment at the hospital because he had to pick up what he described as heavy drums. I did tell him that he could return to employment but would not be able to do strenuous labor which would require a lot of bending, stooping and lifting of heavy things. And on that occasion recommended a twenty percent permanent-partial disability because of his residual back pain.
Q Okay, what does permanent, twenty percent permanent-partial mean? Does that mean forever or....does, in other words, he has that disability, that's to his whole body?
A Yes.
....
Q Forty pounds. Are you saying that he could work on a job....say at Lallie Kemp Charity Hospital if ... if it did not require lifting anything over forty pounds?
A Yes, sir.
Q Say, he could be a guard, for instance, or something of that nature?
A Yes.
Dr. Fambrough saw Keith again in April of 1986 for a disability evaluation and made the following disability findings:
A On this ocassion he said he no longer had any sciatica in his leg. He would have some early morning stiffness and aching in his back but as he got up and moved around during the day his back loosened up and felt alright. If he tried to do any heavy, manual activity he would get aching discomfort in his back, particularly after bending and stooping. Upon examination he did have a.......a slight decreased ankle jerk on the right which is a residual from his previous injury to the nerve. And my summation was that I felt he still had some residual back discomfort, which would inhibit him from being a heavy manual laborer. I felt that he would be employable in a sedentary type position.
Q You didn't change your disability rating from the previous twenty percent?
A No.
As previously indicated, Keith's accident occurred in September of 1984. La.R.S. 23:1221 was extensively amended effective July 1, 1983, by Act 1 of the First Extraordinary Session of 1983. See A. Johnson, Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La.L.Rev. 669 (1984). Thus, at the time of Keith's accident, permanent total disability was defined in La.R.S. 23:1221(2)(c), as follows:
For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
[Emphasis added.]
The medical evidence shows that after July 9, 1985, Keith had a 20% permanent partial disability of the whole body and was employable. The evidence fails to show that Keith was "physically unable to engage in any employment." Cf. Price v. Fireman's Fund Insurance Company, 502 So.2d 1078 (La.1987).
At the time of Keith's accident, temporary total disability was defined in La.R.S. 23:1221(1) as follows:
*444 For injury producing temporary total disability of an employee to engage in any self-employment or gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
[Emphasis added.]
The medical evidence shows that Keith was "unable to engage in any ... gainful occupation for wages" between March 19, 1985, and July 9, 1985, because he was receiving medical treatment for the injury caused by his work-related accident. However, after July 9, 1985, Keith was able to engage in some employment and was no longer totally disabled, either temporarily or permanently.
The trial court's judgment is correct in awarding temporary total disability benefits of $138.39 per week from March 19, 1985, until July 9, 1985; however, the trial court erred by awarding such benefits after July 9, 1985. Accordingly, we will review the other benefit provisions of La.R.S. 23:1221 to see if Keith is entitled to benefits other than those for total disability.
Permanent partial disability is provided for in La.R.S. 23:1221(4). Permanent partial disability of the body as a whole (or back) is not provided for in La.R.S. 23:1221(4)(a through o) or (r). La.R.S. 23:1221(4)(p) and (q) provide as follows:
(p) In cases not falling within any of the provisions already made, where the employee is seriously and permanently disfigured or where the usefulness of the physical function of the respiratory system, gastrointestinal system, or genito-urinary system, as contained within the thoracic or abdominal cavities, is seriously and permanently impaired, compensation not to exceed sixty-six and two-thirds percent of wages for a period not to exceed one hundred weeks may be awarded. In cases where compensation is so awarded, when the disability is susceptible to percentage determination, compensation shall be established in the proportions set forth in Subparagraph (o) of this Paragraph. In cases where compensation is so awarded, when the disability is not susceptible to percentage determination, compensation as is reasonable shall be established in proportion to the compensation hereinabove specifically provided in the cases of specific disability.
(q) No benefits shall be awarded or payable in this Paragraph unless anatomical loss of use or amputation, as provided in Subparagraphs (a) through (o) of this Paragraph or loss of physical function as provided in Subparagraph (p) of this Paragraph is greater than fifty percent as established in the American Medical Association Guides to the Evaluation of Permanent Impairment, copyright 1977, by the American Medical Association.
These provisions of the statute were discussed in A. Johnson, supra, 44 La.L.Rev. at 682 and 688, as follows:
Second, and most important, a new subsection, Louisiana Revised Statute 23:1221(4)(q), now provides that no benefits shall be `awarded or payable' under any portion of the permanent partial disability provisions unless the anatomical loss of use or amputation, or loss of physical function under 23:1221(4)(p), is greater than fifty percent as established in the American Medical Association's Guides to the Evaluation of Permanent Impairment. A review of that volume demonstrates that such ratings are very rare, and the net effect of this limitation will certainly be to limit any schedule awards to a very few cases.
....
The loss of physical function portion of the provision has been narrowed, however. Formerly, serious and permanent impairment of the `usefulness of a physical function' was cognizable under the Act. Now only such impairment of the `respiratory system, gastro-intestinal system, or genito-urinary system, as contained *445 within the thoracic or abdominal cavities' is compensable. The very clear intention of this amendment was to exclude claims for impairment of the function of the back or neck. Awards in pre-1983 cases for impairment of function of the lungs would probably still be cognizable, but awards relating to teeth, the mouth, the ankle, the shoulder, the sense of hearing or smell, or to reproductive capacity would be in serious doubt. A broad reading of the provision might reach some of these, but certainly not all.
[Footnote omitted.]
Accordingly, Keith is not entitled to permanent partial disability benefits.
The only other type of compensation benefits possibly available to Keith would be the Supplemental Earnings Benefits (SEB) provided for in La.R.S. 23:1221(3), which provides, in pertinent part, as follows:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.

(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee can not perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
(d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
(i) As of the end of any two-year period commencing after termination of temporary total disability, unless during such two-year period supplemental earnings benefits have been payable during at least thirteen consecutive weeks; or
(ii) After receipt of a maximum of five hundred twenty weeks of benefits, provided that for any week during which the employee is paid any compensation under this Paragraph, the employer shall be entitled to a reduction *446 of one full week of compensation against the maximum number of weeks for which compensation is payable under this Paragraph; however, for any week during which the employee is paid no supplemental earnings benefits, the employer shall not be entitled to a reduction against the maximum number of weeks payable under this Paragraph; or
(iii) When the employee retires or begins to receive old age insurance benefits under Title II of the Social Security Act, whichever comes first; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.
[Emphasis added.]
Generally, the plaintiff in a worker's compensation case bears the burden of proving the nature and extent of his disability. Campbell v. Luke Construction Company, 465 So.2d 688 (La.1985); Chiasson v. Lafourche Parish Council, 449 So.2d 110 (La.App. 1st Cir.1984). The proof concerning an entitlement to SEB is discussed in A. Johnson, supra, 44 La.L.Rev. at 686, as follows:
Even proof of disability sufficient to be entitled to SEB has become more burdensome for the employee. If an employee is not engaged in any employment, or is earning lower wages than he was prior to injury, the amount of post-injury wages which will go into the calculation for SEB is the amount that he `would have earned in any employment ... which he was physically able to perform' and which was offered to him or proven available to him. In order to prevent the inclusion of wages which he `could have earned' in the calculation, the employee must under Louisiana Revised Statutes 23:1221(3)(c)(ii) establish `by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain,' he cannot perform the tendered or available employment.
[Footnote omitted.]
Our review of the trial court's record and the briefs submitted to this court indicates that this case was not litigated with a view to obtain or defend against SEB. We believe that the interests of justice dictate that this matter be remanded to the trial court for a trial specifically on that issue.

DECREE
For the foregoing reasons, that portion of the judgment of the trial court, awarding compensation benefits for total disability of $138.39 per week after July 9, 1985, is reversed; and this action is remanded to the trial court for the specific purpose of determining if Keith is entitled to SEB after July 9, 1985. In all other respects, the judgment of the trial court is affirmed. The cost of this appeal is to be divided equally between the parties.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.