675 So.2d 1169 (1996)
Kelly TEEL, Sr.
v.
SUPERIOR SCRAP METALS.
No. 95-CA-969.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 1996.
*1170 James C. Klick, Herman, Herman, Katz & Cotlar, New Orleans, for Plaintiff/Appellant.
Jacqueline L. Egan, Baton Rouge, for Defendant/Appellee.
Before BOWES and WICKER, JJ., and CHARLES V. CUSIMANO, II, J. Pro Tem.
WICKER, Judge.
Kelly Teel, Sr. (Teel), a subcontractor, filed a claim for worker's compensation benefits against Superior Scrap Metals (Superior), the contractor, for alleged injuries from an explosion. Teel had no worker's compensation insurance at the time of the accident. Teel argued before the hearing officer that he was a covered employee of himself, a subcontractor, under La.R.S. 23:1061. The hearing officer denied benefits on the basis Teel was not covered under Superior's worker's compensation policy by virtue of this provision. We reverse on other grounds and remand.
On appeal Teel specifies the following errors:
1. The hearing officer erred in considering the issue of whether Teel was covered under the Louisiana Workers' Compensation Statute when no party raised that issue in a pre-trial statement.
2. The hearing officer erred in finding that Teel was not covered where Teel was clearly performing the work of Superior's own employees at the time of the accident and was therefore a covered employee.
Considering the first specification of error, we note that even assuming the issue was not raised, the hearing officer as well as this court could notice on its own motion the failure to state a right of action. La.Code Civ.P. art. 927. Teel stipulated at trial he was a subcontractor to Superior. La.R.S. 23:1061[1] provides for worker's compensation *1171 protection for the employee(s) of the subcontractor and not the subcontractor. Freeman v. Moss Well Service, Inc., 614 So.2d 784 (La.App. 2nd Cir.1993), writ denied, 618 So.2d 413 (La.1993).
Thus the hearing officer correctly concluded that 1061 does not allow a subcontractor coverage under the Worker's Compensation Act. However, our analysis does not end here since La.R.S. 23:1021(6) does allow coverage for a certain type of independent contractor. La.R.S. 23:1021(6) provides:
As used in this Chapter, unless the context clearly indicates otherwise, the following terms shall be given the meaning ascribed to them in this Section:
* * *
(6) "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.
In 13 MALONE & JOHNSON, LOUISIANA CIVIL LAW TREATISE: WORKERS' COMPENSATION § 71 at 126 (1994) [Malone & Johnson], Malone & Johnson note that the determination of the status of independent contractor has been a difficult one. Employers may label certain employees as independent contractors in order to avoid paying compensation. Id. Malone & Johnson opine that the 1948 amendment to La. R.S. 23:1021(6) was designed to address this problem by allowing certain independent contractors to receive compensation "who spent a substantial portion of the work time carrying out the contract in manual labor." Id. at 126, n. 3. Thus, it is the substance of the relationship and not the label used which determines whether an independent contractor recovers under the Act.
In Riles v. Truitt Jones Construction, 94-1224 (La. 1/17/95) 648 So.2d 1296, 1298 the Supreme Court held that 1021(6) "creates a coverage exception for those independent contractors who spend a substantial part of their worktime in manual labor." The first inquiry is to determine whether Teel is an independent contractor. The Supreme Court cited with approval the definition for independent contractor used in Hickman v. Southern Pacific Transport Company, 262 La. 102, 262 So.2d 385 (La.1972) at 390-391 as follows:
[one who has contracted for] a specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer ... It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
The testimony is uncontroverted in this regard. Superior is a recycling business. It used subcontractors at times when it had more work than it could handle with its regular employees. Teel was paid a lump sum by Superior for cutting metal into 2 × 5 pieces, and stacking these for hauling by Superior. Teel was only hired for the duration of this particular job at the ADM grain elevator. Stephen Frechou, Superior's general manager, testified Teel had control over how the job would be accomplished. He also stated that Teel controlled and supervised his own employees.
The next inquiry is whether Teel can be classified as a manual laborer. The Riles court held at 1300:

*1172 The jurisprudence has uniformly defined "manual labor" as work where the "physical element predominated over the "mental" element. This is the correct interpretation of the term "manual labor" in LSA-R.S. 23:1021(6).
Teel testified he and two other men hired by him cut metal into 2 × 5 pieces, and stacked these for hauling. He worked alongside his employees and therefore performed a substantial part of his time in manual labor so as to be covered under La.R.S. 23:1021(6). Riles, supra.
Superior argues in brief that under 23:1061 and 23:1063[2] it would have an action for indemnification from Teel for worker's compensation benefits paid to Teel. It contends that this would lead to an absurd result. We note that Superior has not filed a third party action for indemnification against Teel and that issue is not before the court.[3]
We agree with the hearing officer's interpretation of La.R.S. 23:1061 but find coverage under 23:1021(6). Having found reversible error of law, we now turn to a de novo review of the record to determine whether Teel proved entitlement to worker's compensation benefits. Menard v. Winn Dixie Louisiana, Inc., 93-1497 (La.App. 3rd Cir. 6/1/94) 640 So.2d 775. Teel claims he was temporarily totally disabled from June 3, 1993 through December 15, 1993. Under La.R.S. 23:1221(1)(c) he has the burden of proving by clear and convincing evidence such disability. Bailey v. Smelser Oil & Gas, Inc., 620 So.2d 277 (La.1993). "Disability can be proven by medical and lay testimony." Id. at 280.[4]
At trial the parties stipulated an explosion occurred at the ADM grain elevator on June 3, 1993, and if compensation was awarded it was to be awarded at the minimum compensation rate. Teel testified his left eye and shoulder were injured from the fire in the explosion. Other workers were badly burned. Teel went to St. Charles Hospital where he was treated for his left eye. The eye was patched and he was told to follow up with an eye specialist. Teel next saw his family doctor, Dr. Brian Bertucci, who treated him for a bruised shoulder.
Teel also saw Dr. Bruce Germer, an eye specialist. Prior to the accident Teel had not worn glasses. However, following the accident, his vision was blurry. Dr. Germer prescribed glasses.
Dr. Richard Mestayer, a psychiatrist, also treated Teel. Teel testified he had difficulty sleeping at night because he kept visualizing the burned workers. Dr. Mestayer prescribed anti-depressant medication. Teel stated that approximately two weeks after the explosion he began having chest pains. He ignored the pains until they became more severe in August 1993 when he developed a sharp pain in his chest. At that time he went to Chalmette Medical Center. He testified that in September 1993 Dr. Bruce Iteld told him he suffered an angina attack caused by stress. He has received no further treatment from Dr. Iteld since that date.
*1173 Teel admitted he had a prior heart condition for which he had been treated by Dr. Iteld in 1990. He stated that in 1991 he had a heart attack and angioplasty. He was 40 years of age at the time and had a total blockage of one artery with a severe blockage of another. He continued seeing Dr. Iteld until April 1992. He saw Dr. Iteld in 1992 for chest pain and was prescribed medication. He had no problems with his heart or chest from April 1992 until August 1993.
Teel testified that from June 3, 1993 until December 15, 1993 he was not capable of working because he kept reliving the accident. The anti-depressant medication also kept him drowsy. On the other hand, Dr. Mestayer testified Teel was able to return to light duty work in September 1993 and to full duty work in December 1993.
Teel stated he returned to work after December 15, 1993 but still continues to suffer psychological problems from the accident by virtue of flashbacks.
Superior argues Teel is only entitled to medical benefits for psychiatric treatment by Dr. Mestayer and is not entitled to medical expenses incurred for his treatment by Dr. Iteld.
Dr. Mestayer testified he diagnosed Teel as having Post Traumatic Stress Disorder caused by the accident. He saw him for the first time June 16, 1993. At that time he felt he could not return to work. He explained Teel was not sleeping and was preoccupied with the accident. He stated, "the trauma was such that he would not be able to put it aside to do the work he had to do." He prescribed medication.
Dr. Mestayer next saw Teel July 7, 1993. He still thought Teel was unable to return to work at that time. He increased his medication. On August 6, 1993 he saw Teel again. He was still having symptoms and Dr. Mestayer increased his medication. In August 1993 it was still too early for Teel to return to work because of his emotional problems.
Dr. Mestayer saw Teel September 2, 1993. At this time he was able to return to light duty work because he was improving.
He saw him November 2, 1993. His condition was improving and he could have returned to light duty work. He probably could not have returned to his former job. He next saw Teel December 14, 1993. He was improving and could have returned to full duty work then. However, he still needed treatment.
Dr. Mestayer saw him January 17, 1994. He was still improving and could still continue working. At this time Teel had stopped taking medication on his own. He was scheduled to return in April 1994 but missed the appointment. Dr. Mestayer anticipated possibly releasing him from treatment in April 1994.
Dr. Mestayer testified Teel definitely had Post Traumatic Stress Syndrome and was definitely disabled until September 1993, at which time he could return to light duty work. Although appellant argues Dr. Mestayer's testimony indicates Teel could not return to any type of employment for six months following the accident, Dr. Mestayer's testimony only shows temporary total disability from June 3, 1993 until September 2, 1993. Dr. Iteld testified that in September 1993 Teel was not disabled from a cardiological standpoint. We conclude Teel has met his burden of proving temporary total disability from June 3, 1993 to September 2, 1993. Although the parties stipulated Teel would be awarded compensation at the minimum compensation rate, the record does not contain any evidence as to that rate on June 3, 1993. Therefore, we remand for a determination of his weekly compensation rate. Jim Walter Homes v. Lewis, 544 So.2d 485 (La.App. 2nd Cir.1989). The Lewis court held at 491:
If the injured party is an independent contractor engaged in manual labor of the same kind as that done by his employees, then his profits and overhead cannot be included as a part of "wages" in calculating his weekly rate of compensation benefits. In this situation, courts should determine the prevailing wage for work similar in character to that performed by the claimant and use that amount to compute the amount of compensation due.

*1174 The record in this case does not reveal what a carpenter with Mr. Lewis's experience would have made at the time of the accident. Although there is some evidence to indicate the total amount Mr. Lewis paid his employees, it cannot be determined from the record what the prevailing wage is for someone of Mr. Lewis's experience. It will therefore be necessary that we remand this case to the trial court for a determination of Mr. Lewis's compensation rate from July 16, 1986 to September 3, 1987 and for a lump sum judgment based on that rate [Citations omitted.]
Teel testified he was unable to return to work until December 15, 1993. Dr. Mestayer did not release him to full duty work until December 14, 1993. Teel was still undergoing treatment with Dr. Mestayer in April 1994. Although Dr. Mestayer stated he anticipated releasing him from his care that visit, Teel never showed. Teel continued to experience psychological problems at the date of the hearing.
The record is insufficient for this court to determine whether Teel is entitled to La.R.S. 23:1221(3), Supplemental Earnings Benefits, "a lesser included element of temporary total benefits." Graham v. Georgia-Pacific Corp., 26-165 (La.App. 2nd Cir. 9/23/94) 643 So.2d 352, 362. A remand with a hearing on that issue is necessary in the interests of justice. Keith v. Louisiana State Office of Risk Management, 516 So.2d 440 (La.App. 1st Cir.1987).
Additionally, Teel testified that at the time of trial he was still experiencing psychological problems. Since he did not return to Dr. Mestayer for his April 1994 appointment, he was never released from his care. Teel's right to claim future medical expenses is reserved to him. Thomas v. Highlands Ins. Co., 617 So.2d 877 (La.1993) at 878.
Appellee only questions that portion of medical expenses[5] related to Teel's treatment by Dr. Iteld. Superior argues Teel did not meet his burden of proving that the hospital admission in August of 1993 and medical expenses for treatment by Dr. Iteld were related to the accident. It contends the treatment was related to preexisting coronary disease. The testimony is uncontroverted that the disputed treatment was not related to preexisting coronary disease.
In Tassin v. New Orleans Delivery Service, 550 So.2d 1214 (La.App. 5th Cir.1989) at 1217 we held:
To be awarded medical expenses, the expenses must be the result of a work-related injury and plaintiff must establish his claim for medical benefits and show their relation to the work accident to a reasonable certainty and by a preponderance of the evidence.
Dr. Iteld, a cardiologist, testified he first treated Teel July 11, 1991 for chest discomfort. Teel had an angioplasty in Kentucky for blockages. Dr. Iteld had him undertake an EKG which showed a prior heart attack. He treated him with medication. On October 16, 1991 he performed an angiogram and learned that Teel had blockages which caused chest pain. He performed an angioplasty October 16, 1991 which was successful. He saw Teel for the next three months on a monthly basis.
Dr. Iteld saw Teel in February 1992 when he complained of chest pain. Dr. Iteld thought the pain was probably anginal pain. He saw him again in April 1992 for chest pain. He next saw him in June 1992. On that date Teel was doing well. Dr. Iteld recommended he only return as needed. Dr. *1175 Iteld did not see Teel again until September 20, 1993. In August 1993 Teel was seen by an associate of Dr. Iteld's in the emergency room of the hospital. Teel was having chest pains and was hospitalized for three days.
On September 20, 1993 Teel reported to Dr. Iteld that he had been having chest pain since the date of the accident. His examination and the results of testing were normal. Dr. Iteld testified he did not know whether the accident triggered chest pain from the anxiety. However, he did rule out preexisting heart problems and a heart attack as causes for the pain. Dr. Iteld thought his chest pain syndrome could be from stress from the accident. Dr. Iteld has not seen Teel since September 1993.
Teel has met his burden of proving entitlement to medical expenses incurred for his August 1993 hospitalization and treatment by Dr. Iteld. Dr. Mestayer was convinced Teel suffered from Post Traumatic Stress Syndrome from the accident. This evidence was unrefuted. Dr. Iteld ruled out a preexisting heart condition and a heart attack as causes for the chest pain. He also testified these symptoms could be caused by stress. Teel stated he had no problems with his heart or chest from April 1992 until August 1993, following the accident. Dr. Iteld's testimony was consistent with Teel's testimony since Dr. Iteld reported that Teel was doing well in June 1992. It is undisputed that the total medical expenses were $8,661.18.
Accordingly, for the reasons stated, the judgment is reversed. Judgment is now rendered in favor of Kelly Teel, Sr. awarding temporary total disability benefits from June 3, 1993 until September 2, 1993, in an amount to be determined by the hearing officer on remand in accordance with the views expressed herein. Judgment is also rendered in favor of Kelly Teel, Sr. awarding him $8,661.18 in medical expenses. Teel's right to claim future medical expenses is reserved to him. This matter is remanded for a hearing to determine whether Kelly Teel, Sr. is entitled to Supplemental Earnings Benefits after September 2, 1993. All costs are taxed to the appellees.
REVERSED AND RENDERED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] La.R.S. 23:1061 provides:

A. When any person, in this Section referred to as the "principal", undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
[2] La.R.S. 23:1063 provides:

A principal contractor, when sued by an employee of a subcontractor or his dependent, may call that contractor, or any intermediate contractor or contractors, as a co-defendant, and the principal contractor shall be entitled to indemnity from his subcontractor for compensation payments paid by the principal contractor on account of an accidental injury to the employee of the subcontractor.
[3] However, even assuming this issue was before us Superior would not be entitled to indemnification from Teel, its independent contractor under 23:1021(6), because Teel is "not an employee of a subcontractor as required for indemnification by reason of such statutory provision [La.R.S. 23:1063] ... an individual cannot be his own employee." [Emphasis in original]. Manuel v. Jennings Lumber Co., 231 So.2d 458, 459-60 (La.App. 3rd Cir.1970).
[4] La.R.S. 23:1221(1)(c) provides in pertinent part:

... compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment...
[5] La.R.S. 23:1203(A) provides:

In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services. All such care, services, and treatment shall be performed at facilities within the state when available. The obligation of the employer to furnish such care, services, treatment, drugs, and supplies, is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to R.S. 23:1034.2 or the actual charge made for the service, whichever is less.