| iWICKER, Judge.
This appeal arises from a worker’s compensation claim filed on behalf of Joan R. Joseph (Joseph), plaintiff/appellee, against her employer, Elmwood Medical Center (Elmwood), defendant/appellant. Joseph alleged she suffered an asthma attack arising out of her exposure to cleaning fluid while in the course and scope of her employment. Elmwood denied the asthma was work related. , The trial judge awarded temporary total disability benefits (TTD) from the date of the injury, January 19, 1995, until present at the rate of $106.00 per week; full medical benefits and’costs related to her condition, and penalties and attorney’s fees. Elmwood now appeals. We affirm in part, amend in part, and remand.
Elmwood specifies the following errors on appeal:
1. Elmwood is not liable for worker’s compensation benefits or medical expenses because plaintiff had an asthma attack due to her preexisting asthma condition;
2. In the event this court affirms the trial court’s decision on liability, then the period of time that temporary total disability benefits were awarded by the trial court was incorrect, and
3. Elmwood should not be held liable for penalties and attorney’s fees when this claim for worker’s compensation and medical expenses was reasonably controverted based on the medical reports.
|2PREEXISTING CONDITION:
On January 19, 1995 Joseph was employed in the housekeeping department at Elm-wood Medical Center. She was in the process of cleaning a bathroom with “Go Getter” cleanser. Shortly thereafter she began experiencing breathing difficulty. She testified Joe Pierre (Pierre), who was employed by the respiratory department, gave her an inhaler. She used the inhaler *705 and brought it with her to the emergency room of the hospital. Dr. Jacqueline Kirby, the emergency room physician, testified Joseph was in respiratory distress necessitating hospitalization. Joseph was placed in the intensive care unit. Hospital records indicate Joseph was discharged from the hospital on January 25,1995 with the diagnosis of asthma. .
Dr. Kirby stated she took a history from Joseph which indicated preexisting asthma and asthma treatment. Although Joseph testified she was unable to talk at the time due to breathing difficulty, Dr. Kirby related that Joseph provided her with a history. However, Dr. Kirby admitted she may not have made contemporaneous notations but instead may have made notes of the history approximately one hour later. She explained that Joseph needed emergency treatment and that she could have made notes = after treating Joseph.
Dr. Leonard Glade treated Joseph during her hospitalization at Elmwood. He wrote in his notes that Joseph had a history of asthma and asthma treatment for several years. He also wrote Joseph was followed by her gynecologist. The records of Dr. Pamela K. Branning, Joseph’s gynecologist, were introduced. These records are devoid of any notation of asthma or asthma treatment.
The trial judge concluded the notation that Joseph had preexisting asthma was incorrect in view of Joseph’s denial of previously having asthma. Furthermore, none of the prior medical records introduced at trial indicated treatment for asthma. The trial judge reasoned it was probable that the physicians assumed Joseph had preexisting asthma when she came to the emergency room with an inhaler.
Joseph was hospitalized- a second time for asthma at Lakeland Medical Center. Hospital records indicated she was admitted on April 11, 1995 and discharged on April 17, 1995. Dr. Robert Larimer’s discharge summary states that Joseph complained of acute onset of shortness of breath which began on the evening prior to her admission. However, there is ^another notation in the hospital record which states that Joseph’s asthma attack began at 9:00 P.M. the same night as her admission on April 11, 1995. Joseph testified the attack began after work the date she -sought treatment 'at Lakeland Medical Center.
Dr." Robert Larimer’s report states that she was hospitalized earlier that year at Elm-wood “for exacerbation of asthma which was her first admission ...” There is a notation in the record of the hospital that she has a history of asthma. However, by the date of her admission to Lakeland she had a history of hospitalization at Elmwood for asthma.
Dr, Robert Crosby’s report of a history and physical taken April 11, 1995 show an inconsistency. His report states “She was hospitalized for about a week or so in January of this year at Elmwood Medical Center and she says this admission was for an exacerbation of asthma.” Dr. Crosby’s report also states that Joseph was on Ventolin Inhaler' and Motrin “which she was given recently.” Therefore, although Dr. Crosby’s notes suggest a history of asthma prior to her first hospitalization, the report only refers to treatment with medication “recently” rather than for several years.
The trial judge considered the inconsistencies in the medical records, the absence of any indication in prior medical records of treatment for asthma, and Joseph’s testimony denying a prior history of asthma. Joseph’s application for employment with Elm-wood was also devoid of any mention by her of a history of asthma. The trial judge made a credibility determination in attaching greater weight to Joseph’s testimony. “[Gjreat deference is accorded to the trial court’s factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court’s judgment.” Shephard on Behalf of Shepard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1-308, 1316. We find no manifest error in the trial judge’s conclusion Joseph did. not have a history of asthma or asthma treatment prior to January 19,1995.
Appellant argues it was significant that the medical records of the two hospitalizations carry no notation of chemical exposure. The trial judge evidently attached little weight to *706 the absence of any notation in that regard. The trial judge explained:
... claimant testified clearly, concisely and credibly as to the cause, onset and continuing disability she suffers. Records submitted regarding subsequent attacks support claimant’s testimony as to the onset and causality, as well as to the degree of ^disability.
Appellant argues Pierre would not have given an inhaler to Joseph without medical authorization since the inhaler was a prescription medication. However, Joseph testified an unidentified woman also came to her aid along with Pierre. The trial* judge evidently refused to give any weight to the speculation that Pierre lacked medical authorization. Instead, the trial judge gave Joseph’s testimony denying prior treatment greater weight than any speculation.
With regard to causation, we find no manifest error. This court explained in Banks v. Jefferson Parish School Bd., 95-779 (La.App. 5th Cir. 2/14/96), 670 So.2d 1284, 1287:
A claimant in a worker’s compensation proceeding initially has the burden of establishing disability and its causal relation with the employment accident by a preponderance of the evidence. Walton v. Normandy Village Homes Ass’n., Inc., 475 So.2d 320, 324 (La.1985). A claimant’s disability is presumed to have resulted from an accident if the injured person was in good health prior to the accident but, commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards. There' must also be sufficient medical evidence to demonstrate a reasonable possibility of a causal connection between the accident and the disabling condition. Id. Further, the existence of a pre-existing condition does not disqualify a claim if the work place injury aggravated, accelerated, or combined with the condition to produce death or disability for which compensation is claimed. Id.
... To qualify for temporary total disability benefits, an employee must prove by “clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment ...” Id. The clear and convincing burden of proof is an intermediate standard which requires proof greater than a preponderance of the evidence, but less than beyond a reasonable doubt. Succession of Bartie, 472 So.2d 578, 582 (La. 1985).
Dr. Kirby testified she did not relate the asthma to work because of Joseph’s past history of asthma. However, she explained:
If she wasn’t already on medication for asthma, then I could say this is a .new exposure to a chemical and then suddenly she’s developed bronchial spasm, which definitely can correlate. But with a history of asthma in the past for a long time, already on previous medication, I cannot say her work-the chemicals caused her asthma ... it may have aggravated it, but I can’t say it caused it.
Dr. Larimer, an expert in pulmonary and internal medicine, testified he first saw Joseph during her hospitalization in April 1995 when she was admitted to Lakeland Medical Center by his partner, Dr. Crosby. He diagnosed her as having asthma and stated that 15cleaning fluids and chemical fumes can cause asthma. Dr. Larimer further testified that the Material Safety Data Sheet on “Go Getter” states it is highly toxic and requires use in a ventilated area. Joseph was using this chemical to clean a bathroom. He also stated that if a person is predisposed to asthma then exposure to chemicals can result in the development of asthma.
We find ample testimony and evidence to support the trial judge’s conclusion that Joseph suffered an asthma attack for the first time on January 19, 1995 as a result of exposure to toxic fumes. Joseph was hospitalized a second time in April 1995 after a second exposure to the chemical while she was working. Elmwood argues that this incident is unrelated to work since she became ill at home. However, there is-medical testimony by Dr. Larimer that a reaction need not be immediate, but could occur hours later. The record also supports the trial judge’s conclusion the second incident was *707 work-related. Applying the Banks analysis, we find no manifest error.
TTD BENEFITS:
Appellant contends the trial judge erred in awarding TTD benefits from the date of the accident to the present. We agree. It is undisputed that following the first hospitalization, Dr. Glade released Joseph to return to work with no restrictions on February 21, 1995. Thus, Joseph proved entitlement to TTD benefits only from January 19,1995 until February 21,1995. Joseph testified she returned to work until the second asthma attack on April 11, 1995. After her second hospitalization Dr. Larimer released her to return to work on May 1, 1995 with restriction. Dr. Larimer insisted she wear a mask when exposed to chemical fumes. Appellant notes that personnel records show that Joseph continued to work at Elmwood from May 2, 1995 until June 3, 1995. The June 3, 1995 date is the date listed on Joseph’s claim for unemployment benefits. Joseph does no dispute the June 3 rd date.
Joseph testified that after she returned to work following her second hospitalization, she was contacted by an employee from Elm-wood’s personnel office who informed her Dr. Larimer’s restriction was not acceptable. Joseph further testified the individual from the personnel office told her she would have to sign a consent form that the chemicals would not harm her even while she wore a mask. Joseph stated that Dr. Larimer advised her not to sign jesuch a consent. Elm-wood did not allow her to work after the conversation with this party. Joseph requested that Elmwood allow her to return to work but her request was refused:
Joseph’s testimony that thé employer refused to allow her to work under these circumstances, absent a stipulated disclosure she would suffer no harm is uncontroverted. In order to be entitled to TTD benefits the employee has the burden of proving:
... by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment [emphasis added.]
La. R.S. 23:1221(l)(c). -
The trial court’s judgment is correct in awarding TTD benefits for the following periods: (1) January 19, 1995 until February 21, 1995, and (2) April 11, 1995 until May 1, Í995. However, the trial judge erred in awarding TTD benefits for any other period of time pursuant to La. R.S. 23:1221(l)(c). Joseph was not entitled to temporary total disability for any other period of time since she did not show by clear and convincing evidence that she was physically unable to engage in any employment or self-employ- . ment. Joseph only proved that she could not perform the specific position she was offered by Elmwood.
Because of Joseph’s restriction in employment and her lack of employment after June 3, 1995, she may be entitled to Supplemental Earnings Benefits (SEB) provided for by La.R.S. 23:1221(3) for the time period after June 3, 1995. See, e.g. Keith v. Louisiana State Office of Risk Management, 516 So.2d 440, 444 (La.App. 1st Cir.1987).
Both the record and briefs submitted to this court indicate that the issue of entitlement to SEB was never litigated. The interests of justice dictate that this matter be remanded to the trial court for a trial specifically on that issue as in Keith v. Louisiana State Office of Risk Management, 516 So.2d 440 (La.App. 1st Cir.1987); accord Teel v. Superior Scrap Metals, 95-969 (La.App. 5th Cir. 5/15/96), 675 So.2d 1169, 1174, writ denied[ 96-1566 (La.5/1/97), 693 So.2d 749 wherein this court held:
The record is insufficient for this court to determine whether Teel is entitled to La.R.S. 23:1221(3), Supplemental Earnings Benefits, “a lesser included element of temporary total benefits.” |7Graham v. Georgia-Pacific Corp., 26-165 (La.App. 2nd Cir. 9/23/94), 643 So.2d 352, 362. A remand with a hearing on that issue is necessary in the interests of justice. Keith *708 v. Louisiana State Office of Risk Management, 516 So.2d 440 (La.App. 1st Cir.1987).
ATTORNEY’S FEES AND PENALTIES:
Appellant relies on the medical reports of Joseph’s admission to Elmwood in January 1995 to show that, no mention was made of chemical exposure and that Joseph had a prior history of asthma. Elmwood states it was not until after April 11, 1995 that Dr. Larimer “theorize[d] about chemical exposure causing an asthma attack.” It argues that on that basis it reasonably controverted the award of penalties and attorney’s fees.
Joseph was injured January 19, 1995. The statute in effect at the time of the injury is the applicable statute. See Geason v. Harmony Const., 95-367 (La.App. 5 Cir. 11/15/95), 665 So.2d 485, n. 8. The pertinent statutes, La.R.S.23:1201 E and 1201.2, were amended effective June 29, 1995 by Acts 1995, No. 1137. In Elswick v. Highway Transport, 96-0014 (La.App. 1st Cir. 9/27/96), 680 So.2d 1364 the court held that the amendment was a substantive amendment to b,e applied prospectively only. We agree.
The Elswick court explained at 1368-69:
Under the 1995 amendment, the assessment of attorney’s fees is improper if the claim is reasonably controverted. Prior to the amendment attorney’s fees were awarded upon a finding that the defendant acted arbitrarily and capriciously in its failure to pay benefits.
Therefore, under former La.R.S. 23:1201 E penalties were imposed when the employer failed to pay timely but were not assessed when the “employee’s right to such compensation or medical benefits ha[d] been reasonably controverted by the employer[.]” Additionally, former La.R.S. 23:1201.2 provided for the award of attorney’s fees upon a finding that the failure to timely pay was “arbitrary, capricious, or without probable cause.”
Applying the above-stated principles, we find no manifest error in the trial judge’s award of penalties and attorney’s fees. Elm-wood admittedly had notice of the relationship between inhalation of a toxic chemical and Joseph’s asthma in April 1995. The record is devoid of any evidence Elmwood investigated the claim or conducted any further inquiry. Accord, Carrier v. Debarge’s College Junction, 95-18 (La.App. 3rd Cir. 9/27/95), 673 So.2d|81043.
Accordingly, for the reasons stated the judgment is amended in part to disallow Temporary Total Disability Benefits for any time period other than the following: (1) January 19, 1995 until February 21, 1995, and (2) April 11,1995 until May 1,1995. The judgment, as amended, is affirmed. This case is remanded for further proceedings consistent with the views expressed herein.
AMENDED, AND AS AMENDED, AFFIRMED; CASE REMANDED.